## In re GLOBAL CONSTRUCTION COMPANY, L.L.C., Relator.

No. 14–04–01082–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 9, 2005.

David D. Peden, Cynthia Ann Holub, Houston, for relator.

Kathleen C. Pickett, Houston, for respondent.

Panel consists of Justices FOWLER, FROST and SEYMORE.

## OPINION ON REHEARING

WANDA McKEE FOWLER, Justice.

In ruling on this petition for writ of mandamus filed by Global Construction Company, we must decide if the underlying dispute, in which the real party in interest claims that arbitration is time-barred, is an issue of procedural arbitrability and thus for the arbitrator, or is an issue of substantive arbitrability for the court. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–85, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *see also* Tex. Gov't Code § 22.221; Tex.R.App. P. 52.1. Because the disputed issue—whether Global waived its right, or failed to meet a condition precedent to compel arbitration—is a procedural issue the arbitrator must decide, we conditionally grant the petition.

### Background

On February 21, 2002, C. Springs 300, Ltd. ("C. Springs") entered into a contract with Global for the construction of an apartment complex in Colorado Springs, Colorado. The parties entered into three contracts: a Housing and Urban Development ("HUD") contract containing the project's specifications and cost-plus provision; a repurchase agreement, entered into for the purpose of compliance with HUD regulations; and a side agreement, which provided for Global's profit. The HUD contract provides for submission of disputes to the architect for determination. The contract further provides that "[a]ny claims arising out of or related to the Contract" are subject to arbitration. The architect is required to notify the parties of his decision on the dispute in a letter containing a notice that his decision has been made and that any demand for arbitration must be made within thirty days of the decision or the decision will become final and binding on all parties.

On September 23, 2002, Global submitted a final payment application to C. Springs requesting $225,344.16 as payment for extra work done under the contract. C. Springs refused to pay for the extra work because it claimed Global was not entitled to payment under the contract. Global refused to sign final payment documents until C. Springs paid for the extra

work. After negotiation, the parties determined that C. Springs would pay Global $90,000 for the extra work in exchange for Global's execution of the final payment documents.

C. Springs further requested Global to perform what it classified as warranty work and Global contended was work outside the scope of the contract. This work related to drainage, the swimming pool heater, landscaping, and fire alarm closet heaters. C. Springs submitted those issues to the architect for determination.[1] On January 6, 2004, the architect issued a decision in which he found Global did not have any "valid or outstanding unpaid claims" against C. Springs for additional costs under the contract. He properly notified both parties that his decision was final and that if they did not seek arbitration within thirty days, his decision would be final and binding. On February 26, 2004, C. Springs filed the underlying suit for a declaratory judgment in which it requested a judgment stating that the architect's decision is binding and requested a refund of the $90,000 paid to Global for the extra work. On May 27, 2004, Global filed a motion to compel arbitration. The trial court denied the motion to compel with regard to the claim for defective work and/or warranty work that had been decided by the architect. The court expressly found that Global waived its right to arbitrate those claims that had been submitted to the architect by failing to demand arbitration within thirty days. Global seeks relief from that order by petition for writ of mandamus.

### THE CONTRACT PROVISIONS

The HUD contract contains the following provisions:

1. C. Springs was required to submit the dispute to the architect within twenty-one days

4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Subparagraphs 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Paragraph 4.5.

4.6.2 Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

4.6.3 A demand for arbitration shall be made within the time limits specified in Subparagraphs 4.4.6 and 4.6.1 as applicable, and in other cases within a reasonable time after the Claim has arisen, and in no event shall it be made after the date when institution of legal or equitable proceedings based on such Claim would be barred by the applicable statute of limitations as determined pursuant to Paragraph 13.7.

4.4.6 When a written decision of the Architect states that (1) the decision is final but subject to media-

from its occurrence, but presented this issue well beyond the deadline.

tion and arbitration and (2) a demand for arbitration of a Claim covered by such decision must be made within 30 days after the date on which the party making the demand receives the final written decision, then failure to demand arbitration within said 30 days' period shall result in the Architect's decision becoming final and binding upon the Owner and Contractor. If the Architect renders a decision after arbitration proceedings have been initiated, such decision may be entered as evidence, but shall not supersede arbitration proceedings unless the decision is acceptable to all parties concerned.

## THE PARTIES' BURDENS

■ A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and to show that the claims asserted fall within the scope of the arbitration agreement. *Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 581 (Tex.App.-Houston [14th Dist.] 1999, no pet.). If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement. *In re Oakwood Mobile Homes, Inc.,* 987 S.W.2d 571, 573 (Tex.1999). Here, the parties agree there is an agreement to arbitrate and agree that C. Springs's claims fall within the scope of the agreement. C. Springs claims, however, that Global waited too long after the architect's decision to initiate arbitration and by delaying, waived its right to arbitration. Both parties agree

2. *See also Am. Med. Techs., Inc. v. Miller,* 149 S.W.3d 265, 274 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that, when a

that the Federal Arbitration Act ("FAA") governs the dispute.

## ISSUE FOR ARBITRATOR

■ This case requires us to choose the appropriate adjudicator of this dispute: the judge or the arbitrator. For a variety of reasons, Global contends the arbitrator is the proper adjudicator. C. Springs claims the trial judge must decide the issue because this case involves a condition precedent, which it claims is a substantive issue.

■ The issue is resolved by the United States Supreme Court case, *Howsam v. Dean Witter Reynolds, Inc.* There, the Court noted that compliance with conditions precedent or prerequisites to the obligation to arbitrate, such as notice, time limits, laches, and estoppel, are questions for the arbitrator, not questions for the trial court. *Howsam,* 537 U.S. at 84, 123 S.Ct. 588 (quoting REVISED UNIF. ARBITRATION ACT § 6(c) and cmt. 2, 7 U.L.A. 12–13 (Supp.2002)). The Supreme Court has held that questions of arbitrability fall into one of two categories: issues involving procedural impediments to arbitration or those involving substantive impediments to arbitration. *Id.* at 83–85, 123 S.Ct. 588. Issues of notice, time limits, laches, and estoppel—generally any issue requiring the adjudicator to decide if a party has satisfied the prerequisites to compelling arbitration—involve procedural arbitrability. *See id.* at 84–85, 123 S.Ct. 588. Procedural arbitrability is the province of the arbitrator. *Id.* Substantive arbitrability, on the other hand, requires the adjudicator to determine whether parties have agreed to arbitrate a given dispute. *See id.* at 84, 123 S.Ct. 588 (collecting cases).[2] Substantive arbitrability is the province of the trial judge. *Id.*

party denies a valid agreement to arbitrate ever existed, a court should decide the issue).

C. Springs argues that *Howsam* is not controlling, but we disagree. In *Howsam*, the Court was confronted with a contract requiring that a demand for arbitration must be made within six years of the date of the occurrence. *Id* at 81, 123 S.Ct. 588. The Court held that this limitation was an issue of procedural arbitrability for the arbitrator, rather than a question of substantive arbitrability for the court. *Id.* at 85, 123 S.Ct. 588. The Court's language was broad, indicating that all issues of this sort are procedural in nature. *Id.* Thus, whether the issue is described as being a failure to meet a condition precedent or is described as waiver or laches, each one presents an issue of procedural arbitrability. For this reason, C. Springs's claim that the failure to meet a condition precedent presents a substantive issue, while mere waiver presents a procedural issue, is incorrect.

In short, once the trial court determined that (1) the parties agreed to arbitrate, (2) the agreement was valid, and (3) the claims asserted fell within the scope of the agreement, it had no discretion but to compel arbitration of the dispute, leaving the parties to present the matter of the delay in requesting arbitration to the arbitrator. *See id.*

### CONCLUSION

■ Mandamus will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). The trial court abused its discretion because it misapplied the FAA to the facts of this case. A party who is erroneously denied the right to arbitration has no adequate remedy at law because the fundamental purpose of arbitration—to provide a rapid, less expensive alternative to traditional litigation—would be defeat-

ed. *Jack B. Anglin. Co., Inc. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992).

Because any contractual time limit on a request for arbitration is a matter for the arbitrator, we conditionally grant the petition for writ of mandamus. The trial court is directed to order C. Springs's claims against Global to arbitration. The clerk is instructed to issue writ of mandamus only if the trial court does not follow our direction.