**In re IGLOO PRODUCTS CORP. and Jose Rodriguez, Relators.**

**No. 14–07–00185–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 1, 2007.

Levi G. McCathern II, Jeff C. Wright, Dallas, TX, for appellants.

Kerry M. Guidry, Robert S. Kwok, Peter Michael Kelly, Houston, TX, for appellees.

Panel consists of Justices FROST, SEYMORE, and GUZMAN.

## OPINION

### KEM THOMPSON FROST, Justice.

In this original proceeding, relators Igloo Products Corporation and Jose Rodriguez seek a writ of mandamus directing the respondent, Dan R. Beck, presiding judge of the 155th District Court of Waller County, (1) to vacate his January 9, 2007 order denying relators' motion to compel arbitration, and (2) to grant relators' motion to compel arbitration of all claims pending in the action and to stay trial court proceedings pending such arbitration. We deny the petition for writ of mandamus.

### UNDERLYING FACTS AND PROCEDURAL HISTORY

Igloo Products Corporation is a manufacturing company in Houston, Texas. Igloo does not carry workers' compensation insurance and is thus not a subscriber to the Texas Workers' Compensation Act. Tex. Labor Code Ann. § 406.002 (Vernon 2006). Igloo, however, has established the Igloo Products Corp. Employee Injury Benefit Plan ("the Plan") under the federal Employee Retirement Income Security Act ("ERISA"). *See generally* 29 U.S.C. § 1001 *et seq.* The Plan specifies certain medical, wage-replacement, dismemberment, burial, and death benefits payable to participating employees in the event of injury or death suffered in the course and

scope of employment with Igloo. Participation in the Plan is not a condition of employment with Igloo. To participate in the Plan and to secure the right to receive the specified benefits, an employee must execute an Election and Arbitration Agreement.[1]

Joel Varela was fatally injured on June 23, 2006, during the course and scope of his employment with Igloo. Because Varela was a participating employee under the Plan, Igloo paid medical, funeral, and burial expense benefits to his surviving spouse. Thereafter, Varela's spouse and children (collectively "the Varelas") filed the underlying lawsuit against Igloo and its employee, relator Jose Rodriguez. (Igloo and Jose Rodriguez are hereinafter collectively referred to as "the Igloo Parties.") The Varelas alleged that Joel Varela's death resulted from the Igloo Parties' negligence and gross negligence. The Varelas assert claims under the Texas Wrongful Death Act.[2] *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 71.001–.012 (Vernon 1997 and Supp.2006).

In the trial court, the Igloo Parties moved to compel arbitration of the Varelas' claims under the terms of the Election and Arbitration Agreement that Joel Varela had executed in connection with his participation in the Plan ("the Agreement"). The Agreement purports to bind Varela's "beneficiaries, heirs, children, spouse, parents and legal representatives." The Igloo Parties further asserted that by having accepted payment of benefits under the Plan, the Varelas were equitably estopped and contractually precluded from avoiding the Agreement's arbitration provision. The Varelas opposed the motion to compel arbitration, arguing that neither

---

**1.** The Election and Arbitration Agreement specifically excludes criminal matters and claims for unemployment benefits from the arbitration requirement.

**2.** The Varelas previously asserted a claim under the Texas survival statute, but they no longer assert this claim. *See* Tex. Civ. Prac. & Rem.Code Ann. § 71.021 (Vernon 1997).

Joel Varela's execution of the Agreement nor Igloo's payment of benefits owing to his estate could bind them to arbitrate their individual, personal claims for Joel Varela's wrongful death. The Varelas also contended that, even if the Agreement applied to their wrongful death claims, the trial court should not compel arbitration because the parties have not mediated the Varelas' claims.

The trial court denied the Igloo Parties' motion to compel arbitration, and the Igloo Parties have filed a petition for writ of mandamus in this court.

### STANDARD OF REVIEW

■ The Igloo Parties assert, and the Varelas do not dispute, that the Agreement in this case is subject to the Federal Arbitration Act ("FAA"). *See generally* 9 U.S.C. § 1 *et seq.* Mandamus relief is available when the trial court abuses its discretion by erroneously denying a party its contracted-for arbitration rights under the FAA. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 780–81 (Tex.2006) (orig.proceeding). Therefore, the Igloo Parties' right to mandamus relief hinges on whether the trial court's refusal to compel arbitration was an abuse of its discretion.[3]

■ A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement. *See In re D. Wilson Construction Co.,* 196 S.W.3d at 781. If these two showings are made, the burden shifts to the party opposing arbitration to present a valid defense to the agreement. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227–28 (Tex.2003). In the absence of evidence of a valid defense, the trial court has no discretion to exercise and must compel arbitration and stay its own proceedings. *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 549 (Tex.2002) (orig.proceeding).

The trial court denied the Igloo Parties' motion to compel arbitration. The trial court concluded that the Igloo Parties failed to prove that (1) there is a valid, enforceable arbitration agreement between the Igloo Parties and the Varelas and (2) the Varelas' claims are within the scope of a valid, enforceable arbitration agreement.

### ANALYSIS

■ Both the Plan and the Agreement address resolution of disputes between Igloo and those employees who choose to participate in the Plan. Pertinent portions of both documents are set forth below.

### ELECTION AND ARBITRATION AGREEMENT

By signing this Election and Arbitration Agreement (hereinafter "Agreement"),

---

**3.** In 1992, addressing whether a party is entitled to mandamus relief for wrongful denial of its arbitration rights under an agreement subject to the FAA, the Texas Supreme Court concluded that the Texas Arbitraton Act ("TAA") does not provide such a party the ability to assert an interlocutory appeal. *See Jack B. Anglin, Inc. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992). In 2006, the Texas Supreme Court decided that such a party can file an interlocutory appeal of the trial court's denial of a motion to compel arbitration under an agreement governed by the FAA. *See In re D. Wilson Const. Co.,* 196 S.W.3d 774, 778–80 (Tex.2006). It might appear that the Igloo Parties are not entitled to mandamus relief in this case because the FAA governs the Agreement and, under *In re D. Wilson Const. Co.,* they have an adequate remedy at law by interlocutory appeal. *See id.* However, the Texas Supreme Court reaffirmed in *In re D. Wilson Const. Co.* that mandamus remains available when a party is erroneously denied its contracted-for arbitration rights under the FAA. *See In re D. Wilson Const. Co.,* 196 S.W.3d at 780–81. Therefore, we conclude that mandamus relief is still potentially available to the Igloo Parties.

I, the undersigned employee of Igloo Products Corp. (hereinafter "the Company"), voluntarily elect to participate in the Igloo Products Corp. Employee Injury Benefit Plan (hereinafter the "Plan") and agree with the Company to the following:

* * *

MUTUAL PROMISES TO RESOLVE CLAIMS BY BINDING ARBITRATION: I recognize that disputes may arise between the Company (or one of its affiliates) and me during or after my employment with the Company. I understand and agree that any and all such disputes that cannot first be resolved through the Company's internal dispute resolution procedures or mediation <u>must</u> be submitted to <u>binding</u> arbitration.

**I acknowledge and understand that by signing this Agreement I am giving up the right to a jury trial on all of the claims covered by this Agreement** in exchange for eligibility for the Plan's medical, disability, dismemberment, death and burial benefits and in anticipation of gaining the benefits or a speedy, impartial, mutually-binding procedure for resolving disputes.

**Igloo Products Corp. Employee Injury Benefit Plan**

* * *

**Arbitration of Employment Disputes:** By executing and *agreeing* to the Election and Arbitration Agreement, an Employee affirmatively agrees to submit to binding arbitration all claims or disputes covered by the Election and Arbitration Agreement.

* * *

**B. Arbitration Procedures.** The following provisions are incorporated

by reference into, and made part of, the Election and Arbitration Agreement, the same as if they were set forth at length in the Election and Arbitration Agreement itself:

* * *

3. **Mediation:** The Company (and each Employer) and I agree that the arbitration procedures described in this Paragraph B ... and incorporated by reference into the Election and Arbitration Agreement shall not be invoked unless the party seeking arbitration has first mediated the dispute with the other party or parties.... [4]

The Varelas concede that Joel Varela entered into a valid arbitration agreement with Igloo. They dispute, however, whether that agreement binds them to arbitrate their own personal claims for wrongful death of their husband and father. The Varelas assert that Joel Varela did not and could not bind his spouse and children to arbitrate rather than litigate their wrongful death claims against Igloo. The Igloo Parties assert that the Varelas' acceptance of medical, funeral, and burial benefits under the Plan independently binds them to the arbitration provision. However, we need not address these arguments because we conclude that, even presuming, without deciding, that the Varelas are bound to the arbitration provisions of the Agreement, the Varelas' claims are not within the scope of claims subject to arbitration under the Agreement.

The Agreement requires that "any and all ... disputes *that cannot first be resolved through the Company's internal dispute resolution procedures or media-*

---

**4.** All boldface and underlining emphasis shown in the quoted material is contained in the original documentation.

*tion* <u>must</u> be submitted to <u>binding</u> arbitration." [5] The Plan's arbitration procedures, which are incorporated by reference into the Agreement, *"shall <u>not</u> be invoked <u>unless</u> the party seeking arbitration has first mediated the dispute with the other party."* [6] Neither party has suggested the Plan or the Agreement is ambiguous, and we conclude that both documents unambiguously provide for the arbitration *only* of claims that cannot first be resolved through Igloo's internal dispute resolution procedures or mediation. The Igloo Parties admit that the Varelas' claims have not been mediated or otherwise submitted to Igloo's internal dispute resolution procedures. In their motion to compel arbitration, the Igloo Parties neither alleged nor presented any proof that (1) the Varelas' claims fell within the category of claims that could not be resolved through Igloo's internal dispute resolution procedures or through mediation or (2) the Varelas' claims had been subjected to Igloo's internal dispute resolution procedures or mediation.

■ The Igloo Parties contend, however, that it is for the arbitrator, not the courts, to decide whether arbitration is precluded by there having been no prior mediation or internal dispute resolution procedures. In making this argument, the Igloo Parties rely primarily on *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002). *Howsam* involved a dispute between a securities brokerage firm and its former customer. After the customer commenced arbitration proceedings under the arbitration clause of her brokerage account agreement, the firm filed suit in federal district court seeking a declaratory judgment that the dispute was ineligible for

arbitration and an injunction prohibiting the customer's prosecution of the arbitration proceeding. The firm claimed that arbitration was precluded by the terms of the arbitration code of the National Association of Securities Dealers ("NASD"), under the auspices of which the customer had elected to arbitrate. The NASD code included a rule that no dispute "shall be eligible for submission [to arbitration] . . . where six (6) years have elapsed from the occurrence or event giving rise to the . . . dispute." Finding that the NASD arbitrator should interpret whether the NASD time-limit rule precluded prosecution of the arbitration, the district court dismissed the firm's action. On appeal, the Court of Appeals for the Tenth Circuit reversed, concluding that application of the NASD rule presented a question of the underlying dispute's arbitrability, which is presumptively for a court to decide.

■ On certiorari, the United States Supreme Court stated that courts, rather than arbitrators, should decide "gateway" matters that "contracting parties would likely have expected a court to have decided . . . where they are not likely to have thought that they had agreed that an arbitrator would do so, and consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate." *Howsam,* 537 U.S. at 83–84, 123 S.Ct. at 592. The Supreme Court stated that courts, rather than arbitrators, should decide gateway disputes as to whether parties are bound by a given arbitration clause or whether an arbitration agreement covers a particular kind of controversy. *See id.,* 537 U.S. at 84, 123 S.Ct. at 592. On the other hand, matters of "procedural arbitrability," such

**5.** Italic emphasis added; underlining in original.

**6.** All emphasis added.

as allegations of waiver, delay, or a similar defense to arbitrability, are presumptively for the arbitrator to decide. *See id.* However, this presumption may be overcome by language in the arbitration agreement reflecting an intent contrary to this presumption. *See id.* The agreement in *Howsam* did not exempt from the scope of the arbitration clause claims based on an event that occurred more than six years before the claim was submitted to arbitration. *See id.,* 537 U.S. at 81–82, 123 S.Ct. at 591. The United States Supreme Court held that application of the NASD time-limit rule was the province of the arbitrator based on the arbitration agreement at issue. *See id.,* 537 U.S. at 84–86, 123 S.Ct. at 592–3.

Two of our sister courts have construed *Howsam* in the context of an agreement containing a mediation requirement. *See In re Pisces Foods, L.L.C.,* 228 S.W.3d 349 (Tex.App.-Austin 2007, orig. proceeding); *In re R & R Personnel Specialists of Tyler, Inc.,* 146 S.W.3d 699 (Tex.App.-Tyler 2004, orig. proceeding). In *R & R Personnel Specialists,* the party opposing arbitration argued that the movant had waived its right to arbitration by failing (1) to give timely notice of its underlying claim; (2) to give written notice of its intent to arbitrate the claim; and (3) to participate in mediation before seeking arbitration. Citing *Howsam,* but without quoting the contractual language on which any one of these purported requirements was based, the court of appeals characterized waiver as a question of procedural

arbitrability for the arbitrator to decide. The court granted mandamus relief directing the trial court to vacate its order denying arbitration and to compel such arbitration. *R & R Personnel Specialists,* 146 S.W.3d at 704–05.[7]

In *Pisces Foods,* the trial court denied an employer's motion to compel arbitration of an employee's personal injury claim. The arbitration agreement stated:

> Each Step [of this dispute resolution program] must be followed in sequence so that we have every opportunity to work together toward an agreeable resolution of the issue.... If you have a work-related problem that involves a legally protected right that could not be settled through Steps 1, 2 or 3 [internal dispute resolution procedures and mediation] of the Program, you may request arbitration.

*Pisces Foods,* 228 S.W.3d at 351. Without deciding (1) the employee's claim that she was not bound by the agreement or (2) the employer's claim that the agreement had been wrongfully excluded from evidence at the hearing on the motion to compel arbitration, the court of appeals held that arbitration was not available under the agreement because no mediation had occurred. *Id.*

Discussing both *Howsam* and *R & R Personnel Specialists,* as well as a number of decisions from other jurisdictions,[8] the Austin Court of Appeals held that the relator's right to arbitration had not yet ac-

---

7. *See also In re Weekley Homes,* 985 S.W.2d 111 (Tex.App.-San Antonio 1998, orig. proceeding) (holding, pre-*Howsam,* that whether party's failure to mediate before invoking arbitration provision releases other parties from obligation to arbitrate is procedural question for arbitrator to address in cases in which arbitration agreement did not exempt claims that had not been mediated).

8. *See General Warehousemen & Helpers Union Local 767 v. Albertson's Distribution, Inc.,* 331 F.3d 485, 488 (5th Cir.2003); *HIM Portland, LLC v. DeVito Builders, Inc.,* 317 F.3d 41, 44 (1st Cir.2003); *Kemiron Atlantic, Inc. v. Aguakem International, Inc.,* 290 F.3d 1287 (11th Cir.2002); *Allen v. Apollo Group, Inc.,* No. Civ.A.H–04–3041, 2004 WL 3119918 (S.D.Tex. Nov.9, 2004) (unreported decision).

crued or been triggered because there was no proof that either party had requested or attempted mediation. *Pisces Foods,* 228 S.W.3d at 353–54.

■ The Varelas do not contend (as did the employee in *R & R Personnel Specialists*) that failure to mediate the claims constitutes a waiver of the Igloo Parties' right to compel arbitration.[9] They assert that the Agreement has not yet been triggered and that the trial court thus properly declined to compel arbitration. If Joel Varela agreed to arbitrate all claims and disputes with Igloo without any reference to mediation but with separate arbitration procedures providing for prior submission of disputes to mediation, we might reach a different conclusion. In this case, however, the only claims that Joel Varela agreed to arbitrate were "disputes that cannot first be resolved through [Igloo's] internal dispute resolution procedures or mediation." Because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit to arbitration. *Howsam,* 537 U.S. at 83, 123 S.Ct. at 591. Joel Varela agreed to arbitrate only dis-

putes that were not resolved by Igloo's internal dispute resolution procedures or mediation. Therefore, the issue at hand is a "gateway dispute" as to whether the arbitration agreement covers a particular kind of controversy, and courts, rather than the arbitrator, must resolve this issue. *See id.,* 537 U.S. at 84, 123 S.Ct. at 592; *HIM Portland, LLC v. DeVito Builders, Inc.,* 317 F.3d 41, 44 (1st Cir.2003); *Kemiron Atlantic, Inc. v. Aguakem International, Inc.,* 290 F.3d 1287, 1289–90 (11th Cir.2002); *Pisces Foods,* 228 S.W.3d at 353–54; *see also Allen v. Apollo Group, Inc.,* No. Civ.A.H–04–3041, 2004 WL 3119918, at *5–8 (S.D.Tex. Nov.9, 2004) (Rosenthal, J.). Presuming, without deciding, that the Varelas are bound by the arbitration provisions in question, the trial court did not abuse its discretion by impliedly determining that the Igloo Parties did not prove that the Varelas' claims fall within the scope of the arbitration agreement because they are not "disputes that cannot first be resolved through [Igloo's] internal dispute resolution procedures or mediation." *See Pisces Foods,* 228 S.W.3d at 353–54.[10]

9. The Varelas *assert* a waiver argument, but it is based solely on the contention that by substantially invoking the judicial process, the Igloo Parties have waived the right to arbitrate. However, based on our disposition, we need not address the Varelas' argument in this regard.

10. This court relied on *Howsam* in granting mandamus relief directing the trial court to compel arbitration in *In re Global Construction Company, L.L.C.,* 166 S.W.3d 795 (Tex. App.-Houston [14th Dist.] 2005, orig. proceeding). The question posed was whether "the underlying dispute, in which the real party in interest claims that arbitration is time-barred, is an issue of procedural arbitrability and thus for the arbitrator, or is an issue of substantive arbitrability for the court." *Id.* at 796 (citing *Howsam*). Under the contract at issue in that case, a demand for arbitration was required to be made "within 30 days

after the date on which the party making the demand receives the final written decision [of the Architect]." The trial court "expressly found that [the party] waived its right to arbitrate those claims that had been submitted to the architect by failing to demand arbitration within thirty days." *Id.* at 797. We held that "any contractual time limit on a request for arbitration is a matter for the arbitrator." *Id.* at 799. Although the contract in that case required mediation, the parties did not raise, and the court did not address, this requirement. *Id.* at 797–99. Indeed, in that case, the parties had agreed that the claims involved fell within the scope of the agreement. *Id.* at 798. In addition, unlike the Agreement in this case, the arbitration agreement in that case stated that " '[a]ny claims arising out of or related to the Contract' are subject to arbitration." *Id.* at 796. Therefore, *In re Global Construction Company* is not on point.

Accordingly, we deny the Igloo Parties' petition for writ of mandamus and vacate our March 8, 2007 order staying proceedings in the trial court.