Opinion Issued May 22, 2008 













Opinion Issued May 22, 2008 



 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

________________________

 

NO. 01-07-01068-CV

________________________

 

IN RE JINDAL SAW LIMITED, JINDAL ENTERPRISES LLC, AND
SAW PIPES USA, INC., Relators

 

 

 

 



Original Proceeding on Petition for
Writ of Mandamus

 

 

 



O P I N I O N

 

            By petition
for writ of mandamus, relators, Jindal Saw Limited, Jindal Enterprises LLC, and
Saw Pipes USA, Inc. (collectively, “Saw Pipes”), challenge the trial court’s
October 11, 2007 order denying Saw Pipes’ motion to compel arbitration.[1]
 In two issues, Saw Pipes contends that the trial court abused
its discretion by denying its motion to compel arbitration of the survival
action and wrongful-death claims because an enforceable arbitration agreement
exists and the claims fall within the scope of the arbitration agreement.  We conclude that the non-signatories to the
arbitration agreement are bound to arbitrate the survival action claims because
the signatory agreed to arbitrate his claims against Saw Pipes.  We also conclude, however, that the
non-signatories’ wrongful-death claims are not bound by the arbitration
agreement because those claims are personal to the non-signatories and they did
not agree to arbitrate the claims.  We grant
the petition for writ of mandamus for the survival action and deny the petition
for writ of mandamus for the wrongful-death claims.    

Background

          Saw
Pipes USA, Inc., a steel company in Baytown,
 Texas, offered a benefit plan
under the federal Employee Retirement Income Security Act (“ERISA”) to provide
medical and short-term wage replacement benefits to participants who incurred
occupational injury.  The benefit plan
was provided instead of workers compensation insurance coverage.  Saw Pipes’ employee, Carlos Lara, agreed to
the benefit plan, which included an arbitration agreement.  The agreement, signed by Carlos, stated,

SAW PIPES USA, INC.

EMPLOYEE SAFETY PROGRAM BENEFIT PLAN

 

Saw Pipes USA, Inc. has established, effective May 18,
2006, this plan which provides benefits for Participants who sustain certain
accidental on-the-job injuries.  Such
plan is in compliance with state and federal law, and in accordance with the
following terms and conditions:

 

SECTION ONE

PURPOSE OF THE PLAN

 

. . . .

 

1.2 Purpose. 
The purpose of the Plan is to provide (i) certain medical benefits for
Participants who sustain an occupational Injury; and (ii) certain short-term
wage replacement benefits to Participants who sustain an occupational Injury.

 

          . . . .

 

SECTION FOUR

BENEFITS

 

. . . . 

 

4.2 Medical Benefits.  Medical benefits under this Plan attributable
to a Participant’s Injury will be one hundred percent . . . . 

 

4.6 Death
Benefits.  In the case of a
Participant’s death as a direct result of an Injury, there are no guaranteed
benefits; however, a settlement offer may be made to the Participant’s
beneficiaries.  

 

. . . .

 

(Emphasis added). 


          

          Attached
to the benefit plan was an arbitration agreement that stated, 

SAW PIPES USA, INC.

ARBITRATION AGREEMENT

EXHIBIT A

 

 A.  It is agreed that any and all disputes,
claims, (whether tort, contract, statutory or otherwise) and/or controversies
which relate, in any manner, to this Agreement, the Plan, or to Employee’s
employment with Employer shall be submitted to final and binding
arbitration.  The claims covered by this
agreement to arbitrate include, but are not limited to, those which relate to
the following: 

 

1.  The
formation, application, and interpretation of the Agreement.  

 

2. The release, and waiver, provisions contained
herein, whether initiated by the Employee, or anyone claiming by, through or
under the Employee.  

 

3.  Eligibility
for benefits and coverage under the Plan.

 

. . . . 

 

9.  . . . c) Personal injury cases for
negligence . . . .

 

B.  This arbitration
provision is expressly made pursuant to and shall be governed by Federal
Arbitration Act . . . . 

 

F. This Agreement to arbitrate shall survive the
termination of employee’s employment. 
It may only be revoked or modified by a writing signed by the parties
which specifically states an intent to revoke or modify this Agreement.  

 

. . . . 

ACKNOWLEDGMENT

. . . .

 

It is therefore agreed that both Saw Pipes USA, Inc.
and the undersigned employee will follow the process outlined under the Plan,
in resolving any and all employment related disputes and thus adopt Saw Pipes
USA, Inc. Alternative Dispute Resolution Plan and all internal procedures as
the exclusive means of resolving workplace disputes.  

 

(Emphasis added).  Carlos signed his name below the acknowledgment.  

          A
document entitled, “Saw Pipes USA, Inc. Alternative Dispute Resolution Plan”
was attached to the agreement.  Section
1.2(A) of the Alternative Dispute Resolution plan, which was entitled
“Application and Coverage,” stated,  

Until revoked by Saw Pipes USA, Inc. pursuant to this
Plan, this Plan applies to and binds the Company, each employee who is
in the employment of the Company on or after the effective date of this Plan, and
the heirs, beneficiaries and assigns of such person.  All such persons shall be deemed parties to
this Plan.  

 

(Emphasis added).

          While
at work for Saw Pipes, Carlos was injured, resulting in his death, following
several weeks of hospitalization. 
According to Saw Pipes, Carlos “or his representative, received and accepted
medical and wage replacement benefits under the Benefit Plan for his
occupational injury.”  

          Carlos’s
wife, Yvonne Lara, acting individually, as the representative of the estate of
Carlos, and as next friend on behalf of her two children, sued Saw Pipes for
negligence and gross negligence.  Yvonne
asserted that Saw Pipes negligently failed to train its employees; negligently
hired its employees; failed to supervise its employees; failed to control its
crane; failed to provide a safe workplace; failed to provide adequate workplace
communication; failed to operate the crane safely; and failed to warn Carlos of
the dangerous condition.  According to
the petition, negligence caused the death of Carlos when the employees of Saw
Pipes dropped a series of pipes on him.  

          In
its answer generally denying the claims, Saw Pipes asserted a plea in
abatement, requesting that the claims be sent to arbitration.  Saw Pipes also filed a motion to compel
arbitration.  Saw Pipes contended that
Carlos was bound by his agreement to arbitrate claims and that the “derivative
nature” of the claims for the survival action and wrongful-death claims bound
Yvonne and the children to Carlos’s arbitration agreement.  Yvonne responded that neither she nor her
children should be bound to the arbitration because they did not sign the
agreement with Saw Pipes.  

          The
court refused to compel arbitration.  Saw
Pipes seeks mandamus relief to direct the trial court to (1) vacate its orders
denying the plea in abatement and motion to compel arbitration, (2) compel
arbitration of the claims, and (3) stay all trial court proceedings pending
completion of arbitration.  

Laches

            As a preliminary matter, we address
the assertion by Yvonne and her children that Saw Pipes’ petition is barred
under the principle of laches due to the ten-week delay in pursuing this
petition for mandamus filed by Saw Pipes.

          Although
mandamus is a legal remedy, it is largely controlled by equitable principles,
including the concept that equity aids the diligent and not those who slumber
on their rights.  Rivercenter Assocs.
v. Rivera, 858 S.W.2d 366, 367 (Tex.
1993).  “Two essential elements of laches
are (1) unreasonable delay by one having legal or equitable rights in asserting
them; and (2) a good faith change of position by another to his detriment
because of the delay.”  Rogers
v. Ricane Enters., 772 S.W.2d 76, 80 (Tex. 1989). 
A delay of only a few months can constitute laches. See Rivera,
858 S.W.2d at 366 (four months); Furr’s Supermarkets, Inc. v. Mulanax,
897 S.W.2d 442, 443 (Tex. App.—El Paso 1995, no writ) (four months); In re
Harbrook Tool & Mfg. Co., 181 S.W.3d 551, 551 (Tex. App.—El Paso 2005,
orig. proceeding) (nine months).  A
showing of harm from the delay in filing a petition can include preparing the case
for trial and reliance on discovery, such as reliance on deemed
admissions.  In re East Texas Salt
Water Disposal Co., 72 S.W.3d 445, 449 (Tex. App.—Tyler 2002, orig.
proceeding) (ten-year delay constituted laches). 

           Yvonne and her children believe that they were harmed by the ten-week
delay through their expenditure of “considerable time, effort, and resources
attempting to procure discovery” from Saw Pipes.  Yvonne and her children contend that they (1)
prepared deposition notices, (2) sent “incessant e-mail requests,” (3)
requested deposition dates, (4) were told by Saw Pipes that Saw Pipes
was sending some of the documents and (5) prepared and filed a motion to compel discovery when Saw Pipes
failed to comply with the requests for discovery.  

          In response, Saw Pipes explains that
the ten-week gap between the ruling by the trial court and the filing of the
petition was due to (1) the intervening Thanksgiving holiday, (2) the need to
obtain the certified transcript of the hearing held by the trial court and
certified copies of the pleadings in the trial court, and (3) the time required
to thoroughly analyze and consider the issues presented in the petition.  Saw Pipes also contends that there is no
evidence of undue prejudice from the delay. 
Further, Saw Pipes points out that, in its discovery
responses, it asserted
“that any discovery disputes must be resolved in the arbitration forum.”  

          As support for their position,
Yvonne and her children point to Mulanax.  897 S.W.2d at 443 (holding sixteen-week delay
in filing petition for mandamus constituted laches because no justification
offered for delay in challenging order to produce documents).  Here, the ten-week delay is shorter than the
sixteen-week delay in Mulanax.  See
id.  Also, no one claims that any
depositions had taken place or that documents had been tendered during
discovery.  At most, the record shows
that discovery requests were made and that efforts were made to obtain the
discovery.  We conclude that the petition
is not barred under the principle of laches because the delay was a
short period of time, Saw
Pipes provided reasonable reasons for the delay, and there was no harm from the delay.  See Rogers,
772 S.W.2d at 80.[2]    

Mandamus

          Having
determined that the petition is not barred under laches, we next consider
whether the trial court erred by refusing to compel arbitration.  We must determine whether the survival claims
and wrongful-death actions filed by Yvonne and her children, who were non-signatories
to the arbitration agreement, are subject to the arbitration agreement between the
signatory and Saw Pipes.  

A.   Standard of Review for Refusal to Compel Arbitration 

 

          It
is undisputed that the agreement signed by Carlos specifically states it is
governed by the Federal Arbitration Act (“FAA”).  A party seeking relief from the denial of
arbitration sought under the FAA has no adequate remedy by appeal and is
entitled to mandamus relief to correct a clear abuse of discretion by the trial
court.  In re L & L Kempwood
Assocs., L.P., 9 S.W.3d 125, 128 (Tex.
1999) (per curiam).  If an agreement to
arbitrate exists encompassing the claims in question, and the party opposing
arbitration has failed to prove its defenses, then a trial court has no
discretion; its only option is to compel arbitration.  In re FirstMerit Bank, N.A., 52 S.W.3d
749, 753–54 (Tex.
2001).  In the context of enforcement of an arbitration agreement,
defenses refer to unconscionability, duress, fraudulent inducement, and
revocation.  Id. at 756.  “Whether an enforceable agreement to
arbitrate exists is a legal question entitled to de novo review.”  In re Kepka, 178 S.W.3d 279, 286 (Tex.
App.—Houston [1st Dist.] 2005, orig.
proceeding); Mohamed v. Auto Nation USA Corp.,
89 S.W.3d 830, 835 (Tex. App.—Houston
[1st Dist.] 2002, no pet).  

          Here,
the parties agree that Carlos bound himself to arbitrate his workplace disputes
with Saw Pipes.  The parties also agree
that Yvonne and her children are not signatories to that agreement, and that
the agreement did not provide for death benefits.  The dispute here narrowly concerns whether
Carlos’s agreement to arbitrate employment disputes with Saw Pipes binds Yvonne
and her children to that agreement because the claims of Yvonne and her
children concern Carlos’s employment with Saw Pipes, and Carlos’s agreement
provides that it applies to his heirs, beneficiaries and assigns.

“Under the FAA, ordinary principles
of state contract law determine whether there is a valid agreement to
arbitrate.”  In re Kellogg Brown &
Root, Inc., 166 S.W.3d 732, 738 (Tex.
2005).  “Because arbitration is
contractual in nature, the FAA generally ‘does not require parties to arbitrate
when they have not agreed to do so.’”  Id.  “Federal and Texas state courts have
recognized, however, that ‘[i]t does not follow . . . that under the [FAA] an
obligation to arbitrate attaches only to one who has personally signed the
written arbitration provision’; instead, under certain circumstances,
principles of contract law and agency may bind a non-signatory to an
arbitration agreement.”  Id.  “Federal courts have recognized six theories,
arising out of common principles of contract and agency law, that may bind
non-signatories to arbitration agreements: (1) incorporation by reference; (2)
assumption; (3) agency; (4) alter ego; (5) equitable estoppel; and (6)
third-party beneficiary.”  Id. at 739; see
FirstMerit Bank, N.A., 52 S.W.3d at 755–56 (holding non-signatory is
subject to contract’s arbitration provision when non-signatory sues based on
contract to which arbitration provision is part).  

The law favoring arbitration does not
go so far as to create an obligation to arbitrate where none exists.  See Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478, 109 S. Ct.
1248, 1255 (1989) (arbitration “is a matter of consent, not coercion”); Kellogg
Brown & Root, 166 S.W.3d at 738 (FAA “does not require parties to
arbitrate when they have not agreed to do so”) (quoting Volt, 489 U.S.
at 478, 109 S. Ct. at 1255).  Although
there exists a strong presumption favoring arbitration, “the presumption arises
only after the party seeking to compel arbitration proves that a valid
arbitration agreement exists.”  Kepka,
178 S.W.3d at 286; Mohamed, 89 S.W.3d at 835; see also Fleetwood
Enters., Inc. v. Gaskamp, 280 F.3d
1069, 1073 n.5 (5th Cir. 2002) (“[F]ederal policy favoring arbitration
does not apply to the determination of whether there is a valid agreement to
arbitrate between the parties . . . .”; further, “[T]he federal
policy favoring arbitration does not extend to a determination of who is bound
. . . .”). 

          B.  Wrongful Death

          Saw
Pipes contends that Yvonne and her children are bound to arbitrate their
wrongful-death claims even though they did not sign the arbitration agreement
because they “stand in the shoes” of the decedent, Carlos, and are subject to
the same defenses to which Carlos would be subject.  Saw Pipes asserts, “Although there is no
Texas precedent that has determined whether the pre-death arbitration agreement
between an employee and his nonsubscribing employer binds the employee’s
statutory wrongful death beneficiaries, the century-old general rule remains,
that a decedent’s pre-death contracts bind his wrongful death
beneficiaries.”  Saw Pipes explains its
position as follows:

Once Mr. Lara bound himself to arbitrate his claims
against Relators, he statutorily bound his wrongful death beneficiaries to this
same agreement.  If Mr. Lara had lived,
then he would not have had the defense that he did not sign the agreement, and
therefore, his statutory beneficiaries do not have that defense.  Likewise, because Mr. Lara signed the
arbitration agreement in question, Relators can assert the defense of
arbitration against the Real Parties in Interest.

 

We conclude that although Carlos
agreed to arbitrate his employment disputes between him and Saw Pipes, Yvonne
and her children are not bound to the arbitration agreement because they did
not agree to arbitrate their personal wrongful-death claims.

          The
Wrongful Death Act is codified in the Texas Civil Practice and Remedies
Code.  See Tex. Civ. Prac. & Rem. Code Ann. § 71.001–.012 (Vernon Supp. 2007).  Under the Wrongful Death Act, a decedent’s
beneficiaries may bring an action if the individual injured would have been
entitled to bring an action for the injury had the decedent lived.  Id.
§ 71.003(a).  To advance a wrongful-death
claim, a plaintiff must be a child, parent, or the spouse of the decedent.  Id.

§ 71.004.  The defendant’s wrongful act
must have caused the death of the decedent. 
Id.
§ 71.002.  Finally, the decedent must
have been entitled to bring an action for the injury had he lived.  Id. § 71.003.

          In
a wrongful-death action, a non-signatory is not bound to an agreement to
arbitrate claims entered into by the deceased.  See Kepka, 178 S.W.3d at 294 (“Because
[Marguerite] Kepka did not sign the arbitration agreement in her individual
capacity, and because her wrongful-death claim [for negligence and gross
negligence arising out of William’s care at the nursing home] was necessarily
brought in her individual capacity for damages personal to her, we hold that
the trial court abused its discretion in ordering her individual wrongful-death
claim to arbitration.”).  In Kepka,
Marguerite signed the arbitration agreement on behalf of William as his legal
representative, but she did not sign on her own behalf.  Id.  We held that Marguerite’s wrongful-death
negligence claim, which alleged that she, personally, had been damaged, was not
bound to the arbitration agreement because she signed that agreement as the
legal representative of William, not individually.  Id.  We said, “Wrongful-death claims are personal
to the statutory beneficiaries who assert the claims, and recovery for those
claims does not benefit the estate.”  Id. We explained why language in the
agreement that claimed heirs were bound to the agreement did not apply to
Marguerite in her wrongful-death claims.  Id. at
295–96.   We stated,

A non-signatory wife, asserting in her individual
capacity personal statutory claims for damages such as her own mental anguish
and loss of consortium, earnings, companionship, society, and inheritance,
lacks the type of privity contemplated for the contracting parties to bind her
to a contract that she did not sign in her individual capacity.  Simply put, a surviving wife may be an heir,
within the meaning of an arbitration agreement that she did not sign
individually, to her late husband’s claims; she cannot be an heir to her own
claims.

 

Id. at 296.     

          Saw
Pipes contends that Kepka is distinguishable from the circumstances
presented here, because the “arbitration agreement was not within the
employment context, and the intent that Ms. Kepka had when making her signature
was different than the intent of the late Carlos Lara.”  See id.  Neither of these assertions is
persuasive.  Saw Pipes does not explain
why we should treat an arbitration agreement in an employment context
differently from other arbitration agreements, nor does it explain how Carlos’s
intent differed from Marguerite’s intent. 
In both situations, the non-signatory to the arbitration agreement is
seeking personal claims for wrongful death. 
We see no reason to treat these situations differently.  

          Saw
Pipes also contends that Kepka “did not address” the requirement of Russell
v. Ingersoll Rand that wrongful-death plaintiffs stand in the legal shoes
of the decedent and “the long-standing rule regarding the binding effect of
pre-death contracts.”  See Russell v.
Ingersoll-Rand Co., 841 S.W.2d 343, 345 (Tex. 1992); Kepka, 178 S.W.3d at
295–96.  In Russell, the Texas Supreme Court stated, “[T]he right of statutory beneficiaries to maintain a
wrongful-death action is entirely derivative of the decedent’s right to have
sued for his own injuries prior to his death,” and the statutory beneficiaries
“stand in the legal shoes of the decedent.”  Russell, 841 S.W.2d at 347.  Wrongful-death actions are subject to the
same defenses to which the decedent’s action would have been subject.  Id.
 (holding statute of limitations is
proper defense to wrongful-death actions if defendant could have raised statute
of limitations against decedent); see also Thompson v. Ft. Worth & R.G. Ry. Co., 80 S.W. 990, 991 (Tex. 1904);
Winkler v. Kirkwood Atrium Office
Park, 816 S.W.2d 111, 115 (Tex. App.—Houston [14th Dist.] 1991, writ
denied) (holding membership agreement release signed by member releasing club
from injuries suffered while participating in fitness center programs released
all claims against all individuals and entities, including wrongful-death
claims filed by non-signatory wife and children of decedent).      

          In
Kepka, we recognized the principle that heirs, such as surviving spouses
or children, “stand in the shoes” of the signatory who has agreed to arbitrate
claims.  See Kepka, 178 S.W.3d at
295–96.  We stated, 

An arbitration agreement may recognize that certain
non-parties who have the appropriate sort of privity with one of the
signatories—those such as assignees, agents, subrogated insurers,
representatives, trustees, third-party beneficiaries, etc.—are bound by the
agreement because those types of non-parties “stand in the shoes” of one
of the signatories, are authorized to make decisions on a signatory’s behalf or
for its benefit, were intended to benefit from the signatories’ contract, or
the like . . . .  Some individuals who
qualify as heirs might also fall within this type of privity: for example,
children or a surviving spouse who assert claims as the estate’s representative
on the estate’s behalf.  However, under
basic contract principles, parties to an arbitration agreement generally have
no authority to bind by their contract anyone who does not have the requisite
privity with at least one of them or with the contract itself to arbitrate
anything. . . .

 

Id. (Emphasis added). 
Thus, in Kepka, we recognized the legal concept that a
wrongful-death plaintiff stands in the legal shoes of the decedent.  See id.  But because wrongful-death claims are
personal to the statutory beneficiaries who assert the claims and recovery for
those claims does not benefit the estate, we held that a wrongful-death
plaintiff was not bound to the arbitration clause to which she did not
agree.  Id.

          Nothing
in our decision today, or in Kepka, violates the binding effect of
pre-death contracts.  In Kepka, as
now, we agree that a wrongful-death action is subject to the same defenses as
those to which the decedent’s action would be subject.  See id.  In deciding the ultimate issues in the
dispute, the trier of fact would be bound by the same defenses to which the
decedent’s action would be subject.  See
Russell, 841 S.W.2d at 347.  Those
defenses that go to the merits of the lawsuit would be determined by the
arbitrator, after the court determined the gateway issue of whether the case
should be arbitrated.  See W. Dow Hamm III Corp. v. Millennium
Income Fund, L.L.C., 237 S.W.3d 745, 755 (Tex.
App.—Houston
[1st Dist.] 2007, no pet.) (holding except for limited exception, “res judicata
is for the arbitrator” because defense on merits of lawsuit is matter for
arbitrator to determine); In re Igloo Prods. Corp., 238 S.W.3d 574,
579–80 (Tex. App.—Houston
[14th] 2007, orig. proceeding) (“[M]atters of ‘procedural arbitrability,’ such as allegations of waiver,
delay, or a similar defense to arbitrability, are presumptively for the arbitrator
to decide.”).

          The
issue here concerns the gateway question whether there is an agreement to
arbitrate between Saw Pipes and Yvonne and her children.  See Kepka, 178 S.W.3d at 295–96.  Unlike the defenses described in Russell that apply to the agreement as a
whole, the only defenses pertinent to the gateway question of whether parties
are bound to the agreement’s clause to arbitrate are those contractual defenses
of unconscionability, duress, fraudulent inducement, and revocation.  See
FirstMerit Bank, 52 S.W.3d at 756.  

          Yvonne
and her children are non-signatories to the agreement signed by Carlos and are
asserting the wrongful-death claims in their individual capacities for
non-contractual personal causes of action. 
We conclude that there is no agreement to arbitrate the wrongful-death
claims asserted by Yvonne and her children and that the wrongful-death claims
should not be compelled to arbitration.  See
Kepka, 178 S.W.3d at 295–96; see
Gaskamp, 280 F.3d at 1077 (holding children not bound to arbitration
agreement signed by parents because they are not third party beneficiaries and
are suing for tort claims and not on basis of contract); Merrill Lynch,
Pierce, Fenner, and Smith, Inc. v. Longoria, 783 S.W.2d 229, 231 (Tex.
App.—Corpus Christi 1989, no writ) (holding wife not required to arbitrate
claim for loss of consortium even though it was derivative of wrongful
termination claim of her husband, who was subject to arbitration under
employment contract).  We hold
that the trial court did not abuse its discretion by denying the motion to
compel arbitration of the wrongful-death claims.

          C.  The Survival Action

          Saw
Pipes contends that the negligence claim asserted by Yvonne as the personal
representative of the estate of Carlos is a survival action that must be
arbitrated.  Saw Pipes asserts that
Carlos’s agreement with it bound him to arbitrate his personal injury claims
against it, and therefore the claims and causes of action asserted by the
personal representative and heirs of the estate of Carlos in the survival
action must be compelled to arbitration. 
Yvonne’s lawsuit as the personal representative of the estate of Carlos
is a claim under the Texas Survival Statute. 
See Tex. Civ. Prac. &
Rem. Code Ann. § 71.021 (Vernon Supp.
2007). 

          The
Survival Statute states, 

(a)     A cause of action for personal injury to the
health, reputation, or person of an injured person does not abate because of
the death of the injured person or because of the death of a person liable for
the injury.

 

(b)     A
personal injury action survives to and in favor of the heirs, legal
representatives, and estate of the injured person.  The action survives against the liable person
and the person’s legal representatives.

 

(c)      The suit may be instituted and prosecuted as
if the liable person were alive.

 

Id.  

          Survival
claims are “wholly derivative” of a decedent’s rights.  Russell, 841 S.W.2d at 345.  A survival action does not create a new cause
of action, and merely permits the injured decedent’s cause of action to survive
his death.  Kramer v. Lewisville
Mem’l Hosp., 858 S.W.2d 397, 404 (Tex.
1993).  In most survival actions, the
plaintiff must be the personal representative of the estate.  Belt v. Oppenheimer, Blend, Harrison &
Tate, Inc., 192 S.W.3d 780, 786 (Tex.
2006).  The survival action is for an
actionable wrong that the decedent suffered before his death for which he would
have been able to bring an action had he lived. 
See Russell, 841 S.W.2d at 345. 
Recoverable damages are those that the decedent received while alive.  Id.
 Any defense that would have been
available against the decedent is available against the plaintiffs in the
survival action.  Id.  

          The
plain language of the arbitration agreement between Carlos and Saw Pipes
references people who make claims by, through or under Carlos.  The arbitration agreement provides that the
claims covered by this agreement to arbitrate include “[t]he release, and
waiver, provisions contained herein, whether initiated by the Employee, or
anyone claiming by, through or under the Employee.”  The intent, as described in the agreement,
was to bind anyone making a claim on behalf of Carlos.

          The
Alternative Dispute Resolution plan also referred to its applicability to
people making claims on behalf of Carlos. 
The Alternative Dispute Resolution plan said, “this Plan applies to and
binds the Company, each employee who is in the employment of the Company . . .
and the heirs, beneficiaries and assigns of such person.”  The agreement plainly states that by his
signature, Carlos was bound to the agreement and his intent was to bind his
“heirs, beneficiaries and assigns.”  The
terms in the agreements signed by Carlos are similar to the terms used in the
survival statute.  The survival statute
provides that a “personal injury action survives to and in favor of the heirs,
legal representatives, and estate of the injured person.”  Tex.
Civ. Prac. & Rem. Code Ann. § 71.021(b).   In the agreements
he signed, Carlos agreed to bind himself, as well as any claims asserted on his
behalf by his heirs, legal representatives, and estate in the survival
action.  Carlos, therefore, bound his
personal representative and heirs to arbitrate the claims pursued under the
survival statute.     

          In
Kepka, we explained why the use of the term “heir” in the survival
statute made the survival statute different from the Wrongful Death Act.  See Kepka, 178 S.W.3d at 295–96.  We said, “[O]ur wrongful-death statute (which
grants a personal right to the spouse, children, and parents) does not use the
term ‘heir’ at all, while the survival statute (which establishes claims that
are clearly derivative of the decedent’s rights) provides that ‘[a] personal
injury action survives to and in favor of the heirs, legal representatives,
and estate of the injured person.’” Id. at 296 (emphasis added); compare
Tex. Civ. Prac. & Rem. Code Ann.
§ 71.004(a)–(b) (wrongful-death statute) with id. § 71.021(b) (survival
statute).  We further explained the rationale for treating survival
actions and wrongful-death claims differently in Kepka.  See Kepka, 178 S.W.3d at 296.  We determined that it is  “reasonable to conclude that, when the
contracting parties included ‘heirs’ in this list, they meant only to the
extent that those heirs were functioning in the same capacity as the others
listed, i.e., not when the heirs were suing on their own behalf for
their own personal loss.”  Id.  Thus, Carlos had
the power to bind his heirs in the survival action filed on his behalf but
could not bind the personal wrongful-death claims. 

          Here,
as in Kepka, the agreement states that the heirs are bound to it.  Id. at 284.  Although Yvonne and her children are
non-signatories, we conclude that they are bound to arbitrate the survival
action claims filed in their capacity as the legal representatives and estate
of Carlos, because Carlos bound his heirs to the arbitration agreement.    

          Carlos’s
acceptance of the arbitration agreement survives in Yvonne’s claim as
representative of the estate.  We hold
that the trial court’s refusal to compel arbitration for the survival action is
a clear abuse of discretion. 

          D.  Waiver of Grounds

           Saw
Pipes asserts alternate theories for enforcement of the arbitration agreement,
but none of these theories were presented to the trial court.  In its petition for writ of mandamus, Saw
Pipes contends that Carlos was authorized to bind his minor children to the
arbitration agreement pursuant to the Texas Family Code, that Yvonne and her
children were third-party beneficiaries to the arbitration agreement, and that
Yvonne and her children are estopped from avoiding arbitration under the theory
of direct-benefits estoppel.  Saw Pipes
asserted none of these arguments at the trial court.  The failure to advance these arguments at the
trial court prevents Saw Pipes from asserting them in its mandamus.  See In re E. Tex. Med. Ctr. Athens, 154 S.W.3d 933, 936 (Tex. App.—Tyler 2005, orig.
proceeding); In re Bank of America, No. 01-02-00867-CV, 2003 WL
22310800, at *2 (Tex. App.—Houston
[1st Dist.] Oct. 9, 2003, orig. proceeding) (“[I]t would be hard to conclude,
without circumstances that were highly unusual or that made a trial court’s
ruling void, that a trial court could abuse its discretion in making a ruling
for a reason that was never presented to the court.”).  Because Saw Pipes’ arguments
concerning the Texas Family Code, third-party beneficiaries, and
direct-benefits estoppel were grounds never presented to the trial court, they
cannot be considered in Saw Pipes’ petition for writ of mandamus. 

Conclusion

 

          By
denying the motion to compel arbitration in the October 11, 2007 order, the
trial court abused its discretion with regard to the survival claim and did not
abuse its discretion with regard to the wrongful-death claims.  Accordingly, we grant the petition for writ
of mandamus for Yvonne’s survival claim and deny the petition for writ of
mandamus for the wrongful-death claims of Yvonne and the children.  We lift the stay that we issued when the
petition was filed.  We are confident
that the trial court will act promptly in accord with this opinion, and our
writ will issue only if it does not.

 

 

                                                                   Elsa
Alcala

                                                                   Justice

 

Panel consists of Justices Taft, Keyes, and Alcala.

 











[1]               The
underlying case is Yvonne Lara, Individually, as Personal Representative of the
Estate of Carlos L. Lara, Deceased, and as Next Friend for Tina Lara and Joe
Lara, cause number 370130-401, in Probate Court Number One of Harris
County, Texas, the Hon. Russell Austin presiding.





[2]               We
note that “[w]aiver may be found when it is shown that a party acted
inconsistently with its right to arbitrate and such actions prejudiced the
other party.”  In re Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 574 (Tex. 1999).  Yvonne and her children do not assert waiver
on those grounds.  Also, the record
demonstrates that Saw Pipes consistently pursued its request to arbitrate the
claims and that it did not act inconsistently with its right to arbitrate.