Affirmed and Opinion filed May 20, 2010.                                                       

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00151-CV

___________________

 

Meshark Omoruyi, Appellant

 

V.

 

The Grocers Supply Co., Inc.,
Appellee



 



 

On
Appeal from the 333rd District Court

Harris County,
Texas



Trial Court Cause No. 2006-31296

 



 

 

MEMORANDUM  OPINION

Meshark Omoruyi appeals from the trial
court’s judgment entered in accordance with an arbitration award favoring The
Grocers Supply Co., Inc.  Omoruyi sued Grocers for negligence stemming from an
on-the-job injury he suffered while employed by Grocers.  After the trial court
granted Grocers’ motion to compel arbitration, the arbitrator ruled that
Omoruyi take nothing on his claims against Grocers, and the trial court
consequently dismissed Omoruyi’s claims with prejudice.  On appeal, Omoruyi
contends that (1) an arbitration agreement between Grocers and himself was
rendered void by section 406.033 of the Texas Labor Code; (2) the agreement is
void and unenforceable as against public policy; (3) all conditions precedent
were not satisfied prior to commencement of arbitration proceedings; (4)
Grocers’ breach of its fiduciary duties precludes enforcement of the agreement;
(5) the agreement is substantively unconscionable; and (6) the agreement is
procedurally unconscionable.  We affirm.

I.  Background

In his petition, Omoruyi alleged that on January 27,
2006, he was unloading a truck while in Grocers’ employ.  When a ramp he was
using malfunctioned, Omoruyi attempted to close it manually; a spring attached
to the ramp’s clamp then caused Omoruyi to be thrown backwards.  Approximately
one-half of Omoruyi’s right pinky finger became caught in the ramp’s chain and
was severed.  Grocers is a nonsubscriber to the Texas workers’ compensation
system.  Omoruyi initially received treatment provided through Grocers’ “Occupational
Injury Benefits Plan,” but at some point he sought care from a provider outside
of the Plan and filed suit against Grocers.  He specifically complains of
ongoing pain for which he says the Benefits Plan did not provide treatment coverage.

In his petition, Omoruyi alleged that Grocers was
negligent in failing to provide a safe work environment, including providing
safe machinery, properly supervising employees, and implementing safety
protocols.  He further alleged that such failures proximately caused his injury.
 In regard to damages, Omoruyi contended that as a result of the injury, he was
entitled to:  (1) past, present, and future lost wages; (2) out-of-pocket
expenses, including medical expenses; (3) compensatory damages for deformity,
disability, and pain and suffering; (4) compensatory damages for emotional
distress and mental anguish; and (5) exemplary damages.

Grocers filed a motion to dismiss in which it also
requested that the trial court compel arbitration pursuant to an arbitration
clause contained in an agreement between the parties.  The trial court granted
the motion in part and compelled the parties to arbitrate.  Omoruyi then filed
a request for a writ of mandamus with this court, which we rejected because
Omoruyi failed to establish an entitlement to such relief.  In re Omoruyi,
No. 14-07-00363-CV, 2007 WL 1558738, at *1 (Tex. App.—Houston [14th Dist.] May
31, 2007, orig. proceeding) (mem. op.).  Our memorandum opinion did not
otherwise state a substantive basis for the ruling.  Id.  At the
conclusion of the arbitration proceeding, the arbitrator issued an award
favoring Grocers on the merits and ordering that Omoruyi take nothing on his
claims.  On Grocers’ motion, the trial court then entered a final judgment in
accordance with the arbitration award and dismissed Omoruyi’s claims with prejudice.

The arbitration clause Grocers relied upon was
contained in a document, signed by Omoruyi and a Grocers representative, entitled
“Voluntary Election of Mandatory Arbitration Agreement.”  This Arbitration Agreement
contained mutual promises to resolve any claims covered by the Agreement
through arbitration.  In bold print, the agreement further informed Omoruyi
that in signing, he was relinquishing his right to a jury trial on any covered
claims.  Claims covered by the agreement included tort claims such as
negligence, negligence per se, and gross negligence, to the extent that such
claims stemmed from work-related bodily injury.

The Arbitration Agreement explained that Grocers did
not carry workers’ compensation insurance for its employees but instead had
adopted an “Occupational Injury Benefits Plan.”  It stated that the arbitration
procedures contained in the Plan, as well as in the “Summary Plan Description,”
were incorporated into and made a part of the agreement as if set out therein,
and that the Arbitration Agreement, along with the incorporated arbitration
procedures, constituted the “complete agreement” between the parties.  The Arbitration
Agreement further provided that Omoruyi’s agreement to waive his jury right was
in exchange for eligibility for Plan benefits as well as the inherent benefits
of arbitration procedures, specifically stating that “[i]f such claims cannot
first be resolved through the Company’s internal dispute resolution procedures,
they must be submitted to final and binding arbitration in accordance with this
Agreement.”  Although both parties indicate that Omoruyi’s employment with
Grocers was contingent on his signing the Arbitration Agreement, the Arbitration
Agreement itself actually states that signing was not a condition of
employment.  In signing the Arbitration Agreement, Omoruyi confirmed that he
understood it, entered it voluntarily, and had ample time to read the agreement
and seek the advice of anyone of his choosing.

Grocers’ Benefits Plan provided specified benefits
for injured employees, including medical expenses, “Wage Continuation,” and
payments in the event of death or dismemberment.  Among the exclusions of
coverage contained in the Plan are exclusions for “Mental and nervous
conditions arising incident to the Bodily Injury or Disease, including for
illustration and not limitation, (i) pain and suffering; [and] (ii) mental
anguish, mental trauma, or depression . . . .”

Section 3.7 of the Plan, dealing with arbitration
procedures, provided that any arbitration would be governed by the Federal
Arbitration Act, as Grocers was “involved in . . . interstate commerce.”  It
also provided that the arbitration fees and expenses would be “shared equally,”
except that the employee would not be required to pay more than $125 of the
total amount of fees (an amount the Plan states would be “automatically
increased from time to time in accordance with any adjustments made by the
American Arbitration Association”).  The Plan documents also contained claims
review and appeals procedures to be undertaken in the event a claim for
benefits was denied.

After determining the governing law, we will discuss
Omoruyi’s specific issues.

II.  Which Law Governs:  FAA, TAA, Common Law?

The parties initially dispute whether these
proceedings are properly governed by the Federal Arbitration Act (FAA), the
Texas Arbitration Act (TAA), or common law rules governing arbitration
agreements.  9 U.S.C. §§ 1-307 (FAA); Tex. Civ. Prac. & Rem. Code §§
171.001-.098 (TAA).  Omoruyi specifically contends that because neither the TAA
nor the FAA is applicable to the Agreement, he had the right, which he
exercised, to rescind the contract under common law principles governing
arbitration agreements. In support, he cites L.H. Lacy Co. v. City of
Lubbock, 559 S.W.2d 348, 352 (Tex. 1977).  We hold that the Agreement was
governed by the FAA. Therefore, appellant’s contention is without merit.

The FAA applies to all suits in state or federal court
when the dispute concerns a “contract evidencing a transaction involving
commerce.”  Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992)
(orig. proceeding).  “Interstate commerce” in this context is not limited to
the actual shipment of goods across state lines, but includes all contracts
“relating to” interstate commerce.  In re FirstMerit Bank, 52 S.W.3d
749, 754 (Tex. 2001) (orig. proceeding).  To be applicable, the FAA does not
require a substantial effect on interstate commerce; it requires only that
commerce be involved or affected.  See In re L
& L Kempwood Assocs., 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding).  Interstate
commerce may be shown in a variety of ways, including: (1) location of headquarters
in another state; (2) transportation of materials across state lines; (3)
manufacture of parts in a different state; (4) billings prepared out of state;
and (5) interstate mail and phone calls in support of a contract.  See Jack
B. Anglin, 842 S.W.2d at 270.  Here, the Arbitration Agreement explicitly
states, and Omoruyi and Grocers both acknowledge, that the contract relates to
interstate commerce: Grocers is a wholesale grocery distributor that receives
interstate shipments of goods and then redistributes them.  See In re Border
Steel, Inc., 229 S.W.3d 825, 830-31 (Tex. App.—El Paso 2007, orig.
proceeding) (holding that arbitration pursuant to clause in employee benefits
plan was governed by FAA because employer engaged in interstate commerce and
relying, at least in part, on statements to this effect in the agreement itself).

Omoruyi points out, however, that section 1 of the
FAA contains an exemption clause, making the act inapplicable to “contracts of
employment of seamen, railroad employees, or any other class of workers engaged
in foreign or interstate commerce.”  9 U.S.C. § 1.  Omoruyi contends that his
job as a warehouse worker, whose duties included loading and unloading trucks,
falls within the section 1 exemption.  We disagree.

The United States Supreme Court has held that the
section 1 exemption should be read narrowly, confining application of the
exemption to “transportation workers.”  Circuit City Stores, Inc. v. Adams,
532 U.S. 105, 109, 112-121 (2001).[1] 
As part of the rationale for this narrow reading, the court explained that
Congress may have intended to reserve “for itself more specific legislation for
those engaged in transportation,” such as seamen and railroad employees, and,
in fact, had enacted such legislation in the intervening years since passage of
the FAA.  Id. at 121.  Foreshadowing this rationale, a federal court in
Maryland held that a warehouse foreman, who unloaded interstate shipments of
goods and then repackaged them and reloaded them on trucks for shipment to
other facilities, was not a transportation worker, in part because Congress had
passed no legislation specifically applying to such warehouse workers.  Kropfelder v. Snap-On Tools Corp., 859 F. Supp. 952,
958-59 (D. Md. 1994) (explaining further that while the warehouseman’s work had
a substantial relationship with interstate commerce, it was not in the same vein
as work performed by seamen and railroad workers).

Other courts
have focused more specifically on the nature of the work performed by the
employee in question.  For example, in Lenz v. Yellow Transportation, Inc.,
the court determined that “[t]he real question is whether the employee is
engaged in the interstate transport itself such that the employee has a direct
effect on the channels of interstate commerce.”  352 F. Supp. 2d 903, 908 (S.D.
Iowa 2005).  Surveying other cases considering application of the section 1
exemption, the Lenz court determined that it had to look closely at the
employee’s “specific job duties and responsibilities to determine if [he was] a
transportation worker.”  Id. at 907.  In determining that a “customer
service representative” for a transportation (trucking) company was a
transportation worker and thus exempt under section 1, the court highlighted
facts demonstrating that the employee “had a direct effect on the schedule and
movement of the goods themselves” by “coordinat[ing] freight flow by expediting
movement of shipments” in response to customer concerns.  Id. at 908. 
It further emphasized that the employee’s duties occurred during shipment of
the goods, thus distinguishing his work from that of an employee in a different
case where work occurred before or after shipment and thus was held to not have
a direct effect on interstate commerce.  Id. at 907 (distinguishing Lorntzen
v. Swift Transp., Inc., 316 F. Supp. 2d 1093, 1097 (D. Kan. 2004)).

Applying the
lessons of Lenz here, it is clear that Omoruyi’s job responsibilities—loading
and unloading trucks at the warehouse and
scanning products within the warehouse—were
not “so closely related [to interstate commerce] as to be in practical effect
part of it.”  Id. at 908 (quoting Tenney Eng’g, Inc. v. United Elec.
Radio & Mach. Workers of Am., (U.E.) Local 437, 207 F.2d 450, 452 (3d
Cir. 1953)).  There has been no showing that Omoruyi’s duties directly involved
or impacted the actual shipment or transit of the goods.  Accordingly,
we find that because the section 1 exemption does not apply, the FAA governs
the Arbitration Agreement between the parties. Therefore, Omoruyi was not
entitled to rescind the Agreement under common law principles governing
arbitration.  Additionally, as will be developed more fully below, in
determining the validity of arbitration agreements under the FAA,
we generally apply state-law
principles governing the formation of contracts.
 See In re Palm
Harbor Homes, Inc., 195 S.W.3d 672, 676 (Tex. 2006) (citing First
Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)).

III.  Analysis of Omoruyi’s Issues

A party moving to compel arbitration
must establish that (1) a valid, enforceable
arbitration agreement exists, and (2) the claims asserted
fall within the scope of that agreement. Valero
Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 581 (Tex. App. —Houston [14th Dist.] 1999, no pet.). If the
movant establishes that an arbitration agreement governs
the dispute, the burden then shifts to the party opposing arbitration
to establish a defense to the arbitration agreement. See
In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding).  “Once
the trial court concludes that the arbitration agreement encompasses
the claims, and that the party opposing arbitration has
failed to prove its defenses, the trial court has no
discretion but to compel arbitration and stay its own
proceedings.”  In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 753-54 (Tex. 2001).  Consequently, we
consider whether an agreement imposes a duty to arbitrate under a de novo
standard of review.  In re Provine, No. 01-09-00769-CV; 2009 WL 4967245,
at *3 (Tex. App.—Houston [1st Dist.] Dec. 10, 2009, orig. proceeding).

In his six issues, Omoruyi raises both objections to
the enforceability and validity of the Arbitration Agreement as well as
defenses to its enforcement.  Specifically, he contends that (1) the Arbitration
Agreement was rendered void by section 406.033 of the Texas Labor Code; (2) the
Agreement is void and unenforceable as against public policy; (3) all
conditions precedent to arbitration were not satisfied; (4) Grocers’ breach of
its fiduciary duties precluded enforcement of the Agreement; (5) the Agreement
is substantively unconscionable; and (6) the Agreement is procedurally unconscionable.


A. 
Labor Code Section 406.033

            In his first
issue, Omoruyi contends that because the Arbitration Agreement interferes with
his right to a judicial resolution of his claims, it is voided by operation of
section 406.033 of the Texas Labor Code.  Tex. Lab. Code § 406.033.  In support
of his contention, Omoruyi specifically relies upon subsections (a) and (e) of
that section, which provide as follows:

(a) In an action against an employer who does not have
workers’ compensation insurance coverage to recover damages for personal
injuries or death sustained by an employee in the course and scope of the
employment, it is not a defense that:

(1) the employee was guilty of contributory negligence;

(2) the employee assumed the risk of injury or death; or

(3) the injury or death was caused by the negligence of a
fellow employee.

. . . .

(e) A cause of action described in Subsection (a) may not
be waived by an employee before the employee’s injury or death.  Any agreement
by an employee to waive a cause of action or any right described in Subsection
(a) before the employee’s injury or death is void and unenforceable.

Id. § 406.033(a) and
(e).

            According to Omoruyi,
section 406.033(e) prohibits a pre-injury waiver of a right to judicial
resolution of injury or death claims against a non-subscriber employer.  The
Texas Supreme Court has recently expressly held to the contrary in In re
Golden Peanut Co., 298 S.W.3d 629, 631 (Tex. 2009), a case also involving
personal injury claims against a nonsubscriber to the workers’ compensation system.
 As the court stated in that case:  “[A]n agreement to arbitrate is a waiver of neither a cause of action nor the rights
provided under section
406.033(a), but rather an agreement that those
claims should be tried in a specific forum.  Accordingly, section
406.033(e) does not render the arbitration agreement void.”  Id.  For the reasons expressed in In
re Golden Peanut, we find that section
406.033(e) does not render the Arbitration Agreement at issue in the
present case void.  We therefore overrule Omoruyi’s first issue.

B.  Public Policy[2]

            In his second
issue, Omoruyi contends that the Arbitration Agreement is void as violative of Texas
public policy.  Specifically under this issue, he complains that (1) the Arbitration
Agreement’s waiver of judicial rights was imposed as a condition of employment,
and (2) other perceived “inadequacies” in Grocers’ Benefits Plan “tipped the
scales” against legislative intent as set forth in the Texas Workers
Compensation Act.  Tex. Labor Code §§ 401.001-419.007.

In support of his arguments, Omoruyi places great
reliance on the Texas Supreme Court’s analysis in In re Poly-America, L.P.,
262 S.W.3d 337 (Tex. 2008).[3] 
Such reliance is misplaced.  In Poly-America, the court held that an
arbitration provision in an employment contract was unconscionable because it
limited the remedies available under the anti-retaliation provisions of the
Workers’ Compensation Act; specifically, the contract prohibited the arbitrator
from ordering reinstatement or awarding punitive damages.  Id. at
352-53.  In arriving at this conclusion, the court reaffirmed that a provision
in an agreement between an employer and an employee, that was imposed as a
condition of employment and limited the employer’s liability, would violate
public policy as expressed in the Workers’ Compensation Act.  Id. at 353
(citing Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 550 (Tex. 2001)).  The
court further explained that such waivers of liability would allow employers to
enjoy the Act’s limited-liability benefits while exposing workers to exactly
the sort of injury costs that the Act was designed to shift to employers.  Id. 
In such cases, the balance established by the Act between ensuring compensation
for injured workers on the one hand and limiting employers’ exposure to
uncertain and potentially high damage awards on the other would thus be “tipped
so that the employee’s benefits under the statute are substantially reduced,
[and] the clear intent of the legislature is thwarted.”  Id. (quoting Hazelwood
v. Mandrell Indus. Co., 596 S.W.2d 204, 206 (Tex. Civ. App.—Houston [1st Dist.]
1990, writ ref’d n.r.e.)).  Consequently, private agreements that allow
employers to reap the system’s benefits while burdening employees with the costs
of injury are generally against public policy.  See id.  However, the evils
warned against in Poly-America are not what occurred in the present
case.

Omoruyi first complains that the Arbitration Agreement
between himself and Grocers imposed arbitration as a mandatory condition of
employment.  He does not, however, cite any authority or make any specific
argument as to how this fact alone violated public policy.  To the
contrary, as recognized in Poly-America, Texas public policy favors
resolution of conflicts through arbitration.  Id. at 348 (“Agreements to
arbitrate disputes between employers and employees are generally enforceable
under Texas law; there is nothing per se unconscionable about an
agreement to arbitrate employment disputes and, in fact, Texas law has
historically favored agreements to resolve such disputes by arbitration.”). 
Indeed, in Poly-America, after holding that the liability-limiting provisions
were void, the court ultimately upheld the trial court’s order compelling
arbitration.  Id. at 360-61.  Similarly, in In re Halliburton, Co.,
the Texas Supreme Court held that an arbitration provision imposed as a
condition of employment was not unconscionable.  80 S.W.3d 566, 567 (Tex.
2002).  Based on the analysis in Poly-America and In re Halliburton,
we find that the imposition of an arbitration provision as a condition of
employment in the present case did not in itself violate public policy.[4]

Omoruyi next argues that the following language in
the arbitration procedure portion of the Arbitration Agreement impermissibly
waived protections afforded by the Workers’ Compensation Act:

(e)  Remedies and Defenses.  All parties are
entitled to allege any claim, obtain any remedy, and assert any legal or
equitable defense that the party could allege, obtain or assert in a Texas
state or federal court in that jurisdiction.

Omoruyi specifically contends
that this language violates the prohibition of certain common law defenses
contained in section 406.033(a) of the Workers’ Compensation Act.  Tex. Labor
Code § 406.033(a).  As discussed above, section 406.033(a) provides that in an
action against a nonsubscriber employer, the employer may not utilize the defenses
of contributory negligence or assumption of the risk or assert as a defense that
the injury was caused by the negligence of another employee.  Id.  However,
contrary to Omoruyi’s contention, the Arbitration Agreement does not waive the
section’s prohibition against these defenses.  The Agreement provides that
Grocers could assert the same defenses in arbitration that it could in a state
or federal court.  Thus, the section 406.033(a) prohibition of certain defenses
would operate in an arbitration proceeding under the Agreement just as it would
in a court proceeding, i.e., Grocers would not be entitled to raise the
listed defenses in either forum.

            Lastly, Omoruyi
contends that other Benefit Plan inadequacies “tipped the scales” of the public
policy balance struck in the Texas Workers Compensation Act.  Specifically referencing
the benefits provided under Grocers’ Plan, Omoruyi contends that the Plan was
“void as against public policy [because i]t allowed Grocers to enjoy the Act’s
immunity from judicial proceedings and a jury trial while exposing workers to
exactly the sort of costs of necessary medical treatment and income benefits
that the Act is specifically designed to shift onto the employer.”  Omoruyi
complains in particular about the fact that the Benefit Plan did not cover
“physical symptoms of an Occupational Bodily injury or disease,” and
specifically did not provide benefits for “[m]ental and nervous conditions,”
such as pain and suffering and mental anguish.  We disagree with Omoruyi that
the Plan’s alleged benefit inadequacies rendered it void as against public
policy as set forth in the Act.

            As the Texas
Supreme Court has explained, the Workers’ Compensation Act strikes a balance: 
on the one hand, it relieves employees of the burden of having to prove negligence
and provides them with timely compensation for on the-job injuries; on the
other hand, the Act prohibits employees from pursuing common-law remedies against
employers.  Wingfoot Enters. v. Alvarado, 111 S.W.3d 134, 142 (Tex.
2003); Hughes Wood Prods., Inc. v. Wagner, 18 S.W.3d 202, 206-07 (Tex.
2000).  Here, Grocers’ Plan provided certain benefits in exchange for a mutual
agreement to arbitrate any disputes regarding on-the-job injuries.  Unlike the
Workers’ Compensation Act, the Plan does not prevent an employee from seeking
common law remedies against Grocers.[5] 
In other words, unlike an employee of a Workers’ Compensation subscriber,
Omoruyi could still, and in fact did, sue Grocers for negligence, seeking
compensatory as well as exemplary damages.[6] 
Consequently, Omoruyi has failed to show that the Benefits Plan “tipped the
scales” of the policy balance struck in the Act.[7] 
We find that all of Omoruyi’s public policy arguments are without merit.  We
therefore overrule his second issue.

C.  Condition Precedent

            In issue three, Omoruyi contends that the
trial court erred in compelling arbitration because exhaustion of internal
dispute resolution procedures, a condition precedent to arbitration under the Arbitration
Agreement, was not fulfilled.[8] 
We agree with Grocers that this issue was a matter for the arbitrator to
determine.  Because there is no indication in the record that Omoruyi brought
the issue before the arbitrator, Omoruyi cannot raise it in this appeal.  The
United States Supreme Court has explained that questions of procedural
arbitrability, such as the fulfillment of conditions precedent to arbitration,
are matters for the arbitrator to determine.  In contrast, questions of
substantive arbitrability, such as whether an arbitration agreement is
enforceable or whether the matter at hand falls within the scope of the
agreement, are matters for a court to determine.  Howsam v. Dean Witter
Reynolds, Inc., 537 U.S. 79, 84-85 (2002); John Wiley & Sons, Inc.
v. Livingston, 376 U.S. 543, 557 (1964); see also W. Dow Hamm III Corp.
v. Millennium Income Fund, L.L.C., 237 S.W.3d 745, 753 (Tex. App.—Houston
[1st Dist.] 2007, orig. proceeding); In re Global Const. Co., 166 S.W.3d
795, 798 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding).

A few courts have recognized an exception to this
dichotomy, permitting courts to determine procedural arbitrability questions under
certain circumstances, such as when the issues are factually undisputed.  See,
e.g., Gen. Warehousemen & Helpers Union Local 767 v. Albertson's
Distribution, Inc., 331 F.3d 485, 488 (5th Cir. 2003); In re Pisces
Foods, L.L.C., 228 S.W.3d 349, 352-53 (Tex. App.—Austin 2007, orig.
proceeding); see also In re Igloo Prods. Corp., 238 S.W.3d 574, 579, 581
(Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (holding that issue of
condition precedent was for the court to decide where neither party suggested
either that the agreement was ambiguous or that the condition had been met).  Here,
the parties strongly disagree concerning the facts pertaining to the alleged
condition precedent.  Omoruyi contends that Grocers was required to initiate
and complete internal dispute resolution procedures before seeking to compel
arbitration.  Grocers contends that it fulfilled its contractual obligations respecting
internal dispute procedures by making Omoruyi aware of the procedures after his
claim was denied and by providing him the opportunity to pursue internal
resolution.  Grocers argues that it was Omoruyi who failed to comply with the
Benefit Plan’s rules by essentially dropping out of the Plan and filing his
lawsuit.[9]

Because Omoruyi’s condition precedent argument
implicates procedural matters and not substantive ones, as defined by the
Supreme Court, and it does not fall into any recognized exception to the rule
that procedural arbitrability matters are the province of the arbitrator, Omoruyi
should have raised this issue before the Arbitrator.  Omoruyi does not appeal
any decisions of the arbitrator, and the record does not establish that he made
this argument to the arbitrator.  Consequently, Omoruyi did not preserve this
issue for appeal.  We overrule Omoruyi’s third issue. 

D.  Breach of Fiduciary Duties

            In his fourth
issue, Omoruyi contends that Grocers’ breach of its fiduciary obligations as plan
administrator precluded enforcement of the Arbitration Agreement.  In the
argument section of his brief, however, the only mention Omoruyi makes of any supposed
fiduciary duty is in support of his condition precedent argument discussed
above.  He specifically suggests, in this portion of his brief, that because
Grocers was the plan administrator, the Grocers employee who operated as claims
adjuster for Omoruyi’s claim was obligated to inform him of the available
appeals process and recommend that he undertake that process.[10]  Omoruyi
concludes by arguing that because Grocers failed to fulfill this obligation, it
should be estopped from “contend[ing] otherwise,” apparently indicating that Grocers
should not be permitted to argue that it had fulfilled the conditions precedent
involving internal dispute resolution.  As discussed above, Omoruyi’s condition
precedent arguments were for the arbitrator to decide.  Regardless, at no point
in the brief does Omoruyi argue that the alleged breach of fiduciary duty, by
itself, voided the Arbitration Agreement or otherwise rendered it
unenforceable.  See Tex. R. App. P. 38.1(h).  We decline to make his
argument for him.  Consequently, we overrule Omoruyi’s fourth issue.

E.  Unconscionability

In his fifth and sixth issues, Omoruyi contends that
the Arbitration Agreement was, respectively, substantively and procedurally
unconscionable.  “Substantive unconscionability” refers to the general fairness
of the arbitration provision itself, whereas, “procedural unconscionability”
refers to the fairness of the circumstances surrounding adoption of the
arbitration provision.  In re Palm Harbor Homes, Inc., 195 S.W.3d 672,
677 (Tex. 2006).  Unconscionable contracts are not enforceable under Texas
law.  In re Poly-America, 262 S.W.3d at 348.  The burden of proving
unconscionability is on the party asserting such ground for revocation.  Id. 
Whether an arbitration agreement is unconscionable can be considered by a court
in determining the validity of the agreement.  In re Palm Harbor, 195
S.W.3d at 677 (citing In re Halliburton, 80 S.W.3d 566, 571 (Tex. 2002)
(orig. proceeding)); see also In re Weeks Marine, Inc., 242 S.W.3d 849, 860-61
(Tex. App.—Houston [14th Dist.] 2007, orig. proceeding) (holding that court
could consider procedural unconscionability issue).  

1.  Substantive Unconscionability

            The question of
whether an arbitration clause is substantively unconscionable turns on whether
“given the parties’ general commercial background and the commercial needs of
the particular trade or case, the clause involved is so one-sided that it is
unconscionable under the circumstances existing when the parties made the
contract.”  In re FirstMerit Bank, N.A., 52 S.W.3d 749, 757 (Tex. 2001)
(orig. proceeding).  Under issue five, Omoruyi specifically contends that the Arbitration
Agreement was unconscionable because “it was so grossly one-sided.”  In a
single sentence of argument, he complains that his continued employment was
conditioned on waiver of his rights to sue, to a jury trial, and of the Workers’
Compensation Act’s proscription against a nonsubscriber employer’s common law
defenses in exchange for “grossly inadequate medical benefits.”

            Omoruyi has made
each of these arguments under other issues in his brief, and he provides no
additional reasoning under his substantive unconscionability issue.  In
response to Omoruyi’s arguments based on section 406.033(e) of the Texas Labor
Code, we explained that in signing the Agreement, he did not actually waive his
right to sue, he merely agreed to a particular forum for resolution of his
cause of action.  See In re Golden Peanut, 298 S.W.3d at 631.  In
response to Omoruyi’s public policy arguments, we explained that Texas favors
resolution of conflicts, even in the employer-employee context, through
arbitration and that the Agreement in fact did not conflict with the Act’s
proscription against common law defenses.  See Tex. Labor Code §
406.033(a); In re Poly-America, 262 S.W.3d at 348.  Additionally, we
explained why Omoruyi’s inadequate benefits complaint lacked merit.  For the
reasons discussed in these prior sections of the opinion, we reject Omoruyi’s
substantive unconscionability arguments and overrule his fifth issue.

2.  Procedural Unconscionability

Procedural unconscionability relates to the making or
inducement of the contract, focusing on the facts surrounding the bargaining
process.  TMI, Inc. v. Brooks, 225 S.W.3d 783, 792 (Tex. App.—Houston
[14th Dist.] 2007, pet denied).  Under his sixth issue, Omoruyi asserts
procedural unconscionability based on the purported facts that (1) there was no
negotiation between the parties concerning the Arbitration Agreement; (2) he
was required to sign the Agreement without having reviewed other documents
incorporated therein; and (3) he did not receive “unequivocal notification” of
the modifications to his at-will employment as required.  

Omoruyi first points out that the Arbitration
Agreement was prepared by Grocers and was not subject to negotiation.  The
Texas Supreme Court has held under similar facts that such a “take it or leave
it” offer from an employer to an at-will employee is not, without more,
procedurally unconscionable.  In re Halliburton, 80 S.W.3d at 572. 
Thus, the fact of non-negotiability alone will not render the Arbitration Agreement
here unconscionable.[11]

Omoruyi next asserts that he was required to sign the
Arbitration Agreement without the benefit of reviewing other documents, which
were incorporated by reference into the agreement.  Omoruyi does not, however,
cite any portion of the record demonstrating that he was not permitted to
review the Benefit Plan documents.  Furthermore, Omoruyi does not cite any
authority or provide any specific argument as to how this alleged fact rendered
the Arbitration Agreement unconscionable.  See generally Tex. R. App. P.
38.1(h) (“[Appellant’s] brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the
record.”).  Accordingly, we find no merit in this argument.

            Lastly, Omoruyi
complains that he did not receive “unequivocal notification” of the
modifications to his at-will employment as required by the Texas Supreme Court
in In re Halliburton, 80 S.W.3d at 568-70, and Hathaway v. General
Mills, Inc., 711 S.W.2d 227, 228-29 (Tex. 1986).  Omoruyi’s reliance upon
these cases is misplaced for several reasons.  To begin with, Halliburton
and Hathaway considered whether an employer had given an employee
unequivocal notification of changes to his at-will employment as a question of
contract formation, not as a matter of procedural unconscionability.  Halliburton,
80 S.W.3d at 568-70; Hathaway, 711 S.W.2d at 228-29.  Both cases dealt
with situations in which an employer attempted to modify the terms of an
at-will employee’s employment by providing notice to the employee of the change
and essentially conditioning continued employment on acceptance of the change. 
Halliburton, 80 S.W.3d at 568; Hathaway, 711 S.W.2d at 228.  In
such situations, if the employee continues working after having received notice
of the changes, he or she has accepted the changes as a matter of law.  Halliburton,
80 S.W.3d at 568; Hathaway, 711 S.W.2d at 229.  For modification to be
effective, the notice must be “unequivocal,” and “the employee must know the
nature of the changes and the certainty of their imposition.”  Hathaway,
711 S.W.2d at 229.  In Hathaway, the employee was found to have not
accepted the modification where his supervisor twice told him not to “worry
about” the changes because he (the supervisor) would “take care of the
situation.”  Id. at 228-29.  In Halliburton, the employee was
found to have accepted the changes as a matter of law where he acknowledged that
he received notice and continued working thereafter, even though he asserted
that he did not fully understand the notice.  80 S.W.3d at 568.[12]

            Even if Omoruyi
had properly raised his arguments as matters of contract formation, neither Halliburton
nor Hathaway support the conclusion that no contract was formed under
the facts of this case.  Omoruyi bases his contention that he did not receive
unequivocal notice on discrepancy within the documents:  while the last
sentence of the Arbitration Agreement states that his signing of the Agreement
was not a condition of his employment or continued employment with Grocers,
other statements in the Plan documents suggest that his employment was conditioned
on his agreeing to the Arbitration Agreement and Benefits Plan.  Omoruyi offers
no specific rationale as to how the apparent inconsistency in the documents
rendered the Arbitration Agreement unenforceable, stating only that unequivocal
notice was “a foregone conclusion.”  In support of his position, he cites Hathaway,
in which the employee was given conflicting information as to whether or not he
had to accept the modification as a condition of his continued employment.  711
S.W.2d at 228.  The facts of Hathaway are distinguishable from those of
the present case.  In that case, the issue was whether the employee had agreed
to the modification based on the employer’s notification and his subsequent
conduct.  Id. at 228-29.  In contrast, because Omoruyi signed the Arbitration
Agreement, there is no issue of contract formation or subsequent modification.[13]  Accordingly, we
overrule Omoruyi’s sixth issue.[14]

IV.  Conclusion

Having overruled all of Omoruyi’s appellate issues,
we affirm the trial court’s judgment. 

                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief
Justice Hedges, Justice Anderson, and Senior Justice Mirabal.*

 









[1] The Circuit City
Court further explained that the phrase “engaged in . . . interstate commerce”
contained in the section 1 exemption was considerably narrower than the phrase
“involving commerce” used in section 2 to describe the type of agreements to
which the FAA would apply.  532 U.S. at 112, 114-19.  In other words, the FAA
applies to employment contracts that evidence a transaction involving
interstate commerce unless the employee is actually engaged in such commerce as
a part of his job duties.  See 9 U.S.C. §§ 1, 2; Circuit City,
532 U.S. at 114-19.





[2] The types of arguments
Omoruyi makes under the rubric of “public policy” are often, but not always,
considered by courts under the principles governing substantive
unconscionability.  These general principles are set forth below in regards to
Omoruyi’s substantive unconscionability arguments, which to some degree, merely
reprise his public policy arguments.





[3] The court explained in Poly-America
that even though the arbitration proceedings were governed by the FAA, federal
preemption did not apply to the assessment of whether the parties had entered
into a valid and enforceable agreement to arbitrate under state contract law. 
262 S.W.3d at 347.





[4] It is important to note
that this case does not present a situation where an employee was forced to
agree to waive his right to sue his employer for negligence or to limit the
employer’s potential liability in exchange for occupational injury benefits.  See
generally Lawrence, 44 S.W.3d at 550 (suggesting such a liability-limiting
provision would violate public policy).  In signing the Agreement and
continuing to work for Grocers, Omoruyi did not give up his right to seek
common law remedies or to any limitation on those remedies.  He merely agreed
to arbitrate such disputes rather than try them in court.





[5] Indeed, the Plan
documents themselves appear to preserve common law remedies.  Appendix D to the Benefits Plan is a document
entitled:  “Mutual Agreement to Arbitrate Occupational Injury and Disease
Claims.”  Section 4 of this agreement states in part that “[w]hile both
Claimant and Company retain all substantive legal rights and remedies under
this Agreement, Claimant and Company are each waiving all rights which either
may have with regard to trial . . . .”  Subsection 5(a) states that the
claims covered by the agreement include all claims for pain and suffering and
mental anguish (the very types of claims Omoruyi contends were
restricted).  And, perhaps most importantly, subsection 6(e) states that
in an arbitration proceeding, “[a]ll parties are entitled to . . . obtain any
remedy . . . that the party could [obtain] in a Texas state or federal court in
that jurisdiction.”





[6] An employee of a
subscriber can notify his or her employer of his or her intention to opt out of
the system and retain their common law rights of action, provided the employee
does so by the time limits established in the Act.  See Tex. Labor Code
§ 406.034.





[7] In Lawrence, the
Texas Supreme Court cautioned against a plan-by-plan comparison of occupational
injury plans versus benefits under the Act.  44 S.W.3d at 551-52.  As the court
pointed out, there are substantial “difficulties inherent in quantifying and
measuring such intangible benefits” such that “a comparative-equivalency
analysis [would foster] unpredictability of outcome and [undermine] judicial
economy.”  Id. at 551.  In the present case, such an analysis is
additionally unnecessary because the Agreement and the Plan did not require
Omoruyi to waive any right of action or accept any limitation on liability in
exchange for benefits.





[8] The language that Omoruyi
contends creates a condition precedent reads as follows:  “If such claims
cannot first be resolved through the Company’s internal dispute resolution
procedures, they must be submitted to final and binding arbitration in
accordance with this Agreement.”





[9] Cases recognizing an
exception to the Howsam procedural-substantive dichotomy typically have
involved mediation as a condition precedent to arbitration under the agreement
at hand rather than exhaustion of internal dispute procedures.  See, e.g., In
re Igloo, 238 S.W.3d at 579, 581; In re Pisces Food, 228 S.W.3d at
351.  While mediation either occurs or does not occur in a given case, the
question of when and under what circumstances internal dispute procedures have
been sufficiently utilized to fulfill a condition precedent to arbitration can
be a much more nuanced query.  The cases recognizing an exception to the Howsam
dichotomy are, therefore, additionally distinguishable from the present case on
this basis.





[10] In support of his claim
that Grocers owed fiduciary duties to him, Omoruyi cites Aranda v. Insurance
Co. of North America, 748 S.W.2d 210 (Tex. 1988), which he contends stands
for the proposition that an “insurer owes fiduciary duties to its insured.”  He
has misstated the holding in Aranda. It holds merely that an insurer,
specifically a workers’ compensation carrier, has a duty to “deal fairly and in
good faith” with its insureds, or specifically, a covered, injured worker.  748
S.W.2d at 212-13.  Omoruyi offers no authority or argument as to whether such a
duty would also apply in the context of a benefit plan such as involved in the
present case.  Omoruyi also fails to offer authority or argument supporting the
supposed fiduciary duty that he would impose upon Grocers.  Because of our
resolution of this issue, we need not analyze any of these unsupported points.





[11] Omoruyi asks this court
to compare our sister court’s opinion in In re Brookshire Brothers, Ltd.,
198 S.W.3d 381 (Tex. App.—Texarkana 2006, orig. proceeding), to the facts of
this case.  In Brookshire Brothers, the court pointed out that the
employee had no bargaining ability in respect to an arbitration clause imposed
by her employer; however, the court considered this fact as only one of several
factors demonstrating that the agreement was procedurally unconscionable,
including that she was already in the process of pursuing legal claims against
her employer when it imposed the arbitration requirement.  Id. at 388. 
No aspect of Brookshire Brothers suggests that the agreement in the
present case was procedurally unconscionable.





[12] It is not entirely clear
from the Halliburton opinion exactly what documents the employee
received as notification, but it appears that, as here, the employee received a
summary of the plan and not the plan itself.  80 S.W.3d at 568-69.





[13] We need not and do not
make any holdings respecting whether in fact Omoruyi’s acceptance of the
changes was a condition of his employment.





[14] In his reply brief,
Omoruyi points out that the Texas Supreme Court has held that nonsubscriber
workers’ compensation benefits plans must fulfill the fair notice requirements
of conspicuousness and the express negligence doctrine.  See Storage &
Processors, Inc. v. Reyes, 134 S.W.3d 190, 191, 193-94 (Tex. 2004). 
However, Omoruyi did not mention this holding in his original briefing and
makes no argument that such holding rendered the plan at issue in the present
case procedurally unconscionable.





*
Senior Justice Margaret Garner Mirabal, sitting by assignment.